IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:21-CV-48-D

MALIA W. LYNCH,                          )
Administrator of the Estate of           )
BETTY JEAN WELLS, Deceased,              )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        ORDER
                                         )
THE CITADEL                              )
ELIZABETH CITY, LLC, and                 )
ACCORDIUS HEALTH, LLC,                   )
                                         )
                    Defendants.          )

On September 9, 2021, Malia W. Lynch ("Lynch" or "plaintiff"), as administrator of the estate of her mother, Betty Jean Wells ("Wells"), filed a complaint in the Pasquotank County Superior Court against The Citadel Elizabeth City, LLC and Accordius Health, LLC (collectively, "the Citadel" or "defendants") [D.E. 1-1]. On November 23, 2021, Lynch filed an amended complaint in state court alleging the Citadel was grossly negligent in its care for Wells [D.E. 13]. On December 1, 2021, defendants removed the action to this court but filed only the original complaint [D.E. 1]. On December 3, 2021, defendants moved to dismiss Lynch's complaint for failure to state a claim based on a statutory immunity in the Emergency or Disaster Treatment Protection Act, N.C. Gen. Stat. §§ 90-21.130–134 ("EDTPA") [D.E. 6]. On December 20, 2021, defendants filed a renewed motion to dismiss responding to the amended complaint and, in the alternative, moving for a stay in light of ongoing North Carolina litigation concerning the EDTPA [D.E. 11]. Defendants also filed a brief in support of the motions [D.E. 12]. On January 5, 2022,

the Citadel filed a copy of Lynch's amended complaint along with the rest of the state court record [D.E. 13]. On January 20, 2022, Lynch responded in opposition to the motion to dismiss and the motion for a stay [D.E. 18]. On January 31, 2022, defendants replied [D.E. 20]. On April 18, 2022, defendants withdrew their motion for a stay [D.E. 21]. As explained below, the court denies without prejudice defendants' motions to dismiss.

I.

Lynch is citizen of Elizabeth City, North Carolina, and is Wells's daughter. See Am. Compl. [D.E. 13] ¶ 1.[1] Lynch is the duly appointed administrator of Wells's estate, which is a resident of North Carolina. See id.; Notice of Removal [D.E. 1] ¶ 3. The Citadel Elizabeth City, LLC and Accordius Health, LLC are North Carolina limited liability companies whose sole members are Naftali Zanziper and Simcha Hyman, residents of New York. See Notice of Removal ¶¶ 5–6. A limited liability company is a citizen of all states in which one of its members is a citizen. See Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004). Therefore, defendants are New York citizens.

According to the amended complaint, on June 21, 2020, Wells was admitted to the hospital after a fall at home and was diagnosed with injuries related to her fall and other medical conditions related to advancing age, including balance impairment. See Am. Compl. ¶¶ 14–15. The hospital recommended that Wells move "to a skilled nursing facility for rehabilitation services for strengthening in order to return home." Id. ¶ 15. Medical care providers at the hospital contacted the admissions coordinator at the Citadel, discussed the care needed and Wells's conditions, and the Citadel agreed it was a proper facility and would accept Wells. See id. ¶ 16. On June 29, 2020,

---

[1] Docket entry 13 includes a copy of both the original and amended complaints. In this order, all citations to "Am. Compl." refer to the paragraph numbers in the amended complaint.

2

Wells was transported to the Citadel. On that same date, skilled nurses and administrators assessed and admitted Wells to the Citadel. See id. ¶ 17. Wells remained at the Citadel until August 10, 2020, when "she was transferred to Sentara Albemarle Hospital with an admission diagnosis of a Systemic Inflammation Response Syndrome (SIRS) resulting from unstageable right buttock and sacral pressure injury and infection." Id. ¶ 19. On August 15, 2020, Wells died from sepsis that developed from pressure ulcers and injuries she sustained during her stay at the Citadel. See id. ¶ 20.

Lynch alleges North Carolina claims for gross negligence and respondeat superior liability for gross negligence concerning the care Wells received at the Citadel and seeks compensatory damages. See Am. Compl. ¶¶ 21–34. The amended complaint also contains a North Carolina Rule of Civil Procedure 9(j) certification, which is required when filing a medical malpractice claim in North Carolina courts. See N.C. R. Civ. P. 9(j).

II.

This court has subject-matter jurisdiction based on diversity. See 28 U.S.C. § 1332. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369

3

(quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court "must follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

The Citadel moves to dismiss based on statutory immunity. See [D.E. 12] 2–4. In support, the Citadel cites the EDTPA.[3] Lynch responds that it is not evident from the face of the amended complaint that the Citadel meets the requirements for immunity under the EDTPA. See Resp. [D.E. 18] 8–9.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief

---

[2] North Carolina has no mechanism for certifying questions of state law to the Supreme Court of North Carolina. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

[3] Defendants also argue that N.C. Gen. Stat. § 99E-71 provides immunity. That provision provides immunity for "any act or omission alleged to have resulted in the contraction of COVID-19." N.C. Gen. Stat. § 99E-71(a). Lynch, however, does not allege that Wells contracted COVID-19. Therefore, N.C. Gen. Stat. § 99E-71 does not apply.

4

that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quotation omitted); see Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996); accord Forbis v. Honeycutt, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981).

In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005).

The EDTPA provides "immunity from any civil liability for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services" for "any health care facility, health care provider, or entity that has legal responsibility for the acts or omissions of a health care provider." N.C. Gen. Stat. § 90-21.133(a). The immunity applies only if:

> (1) The health care facility, health care provider, or entity is arranging for or providing health care services during the period of the COVID-19 emergency

5

declaration, including, but not limited to, the arrangement or provision of those services pursuant to a COVID-19 emergency rule.

(2) The arrangement or provision of health care services is impacted, directly or indirectly:

    a. By a health care facility, health care provider, or entity's decisions or activities in response to or as a result of the COVID-19 pandemic; or

    b. By the decisions or activities, in response to or as a result of the COVID-19 pandemic, of a health care facility or entity where a health care provider provides health care services.

(3) The health care facility, health care provider, or entity is arranging for or providing health care services in good faith.

Id.

The parties agree that the Citadel provided health care services during "the period of the COVID-19 emergency declaration." Id. § 90-21.133(a)(1); see Am. Compl. ¶¶ 17–19; Resp. at 2; Reply at 2. As for whether the Citadel's "arrangement or provision of health care services" was "impacted, directly or indirectly. . . [b]y a health care facility, health care provider, or entity's decisions or activities in response to or as a result of the COVID-19 pandemic," N.C. Gen. Stat. § 90-21.133(a)(2), this element does not appear difficult to meet in light of the COVID-19 pandemic. Nonetheless, at the motion to dismiss stage, the elements of the asserted immunity must be evident on the face of the amended complaint or from other materials of which the court may take judicial notice. See Occupy Columbia, 738 F.3d at 116. Plaintiff does not mention COVID-19 or any changes to Citadel's operations or policies in the amended complaint. And defendants do not cite to any portion of the amended complaint or any other information that would satisfy this element of its immunity defense. Therefore, taking the allegations in the light most favorable to the nonmoving party, the Citadel has not shown that EDTPA immunity applies. Whether the Citadel can establish

EDTPA immunity on a more fully developed record is an issue for another day. Finally, because it is not apparent from the amended complaint that the Citadel's arrangement or provision of healthcare services was impacted by its decisions or activities in response to or as a result of the COVID-19 pandemic, the court need not decide whether plaintiff plausibly alleged bad faith. Cf. Shannon v. Testen, 243 N.C. App. 386, 390, 777 S.E.2d 153, 156 (2015) (allegations of "mere negligence" do not allege bad faith sufficiently to overcome statutory immunity for "[p]eer review activities conducted in good faith." (quotation omitted)).

### III.

In sum, the court DENIES WITHOUT PREJUDICE defendants' motion to dismiss [D.E. 6] and renewed motion to dismiss [D.E. 11]. On a more fully developed record, defendants may seek immunity under the EDTPA.

SO ORDERED. This 12 day of July, 2022.

JAMES C. DEVER III
United States District Judge